UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BELINDA CALHOUN,

    Plaintiff,

v.                                         Case No. 8:21-cv-0076-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

    This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) erred by discounting her subjective complaints of disabling pain. After considering Plaintiff's argument, Defendant's response, and the administrative record (Docs. 12, 19), I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence. I affirm.

    A. *Background*

    Plaintiff Belinda Calhoun was born on December 10, 1975, and was two weeks shy of her 43rd birthday when she allegedly became disabled on November 30, 2018.[1] (R. 15, 34) Plaintiff is single, lives alone, and has a high school education. (R. 42) Her past work experience is as a security guard at an apartment complex and a cashier at a Dollar General

---

[1] For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her date last insured (DLI). 42 U.S.C. § 423(a)(1)(A). Plaintiff's DLI for DIB purposes is December 31, 2023. (R. 18)

1

and several fast-food restaurants. Plaintiff alleges disability due to kidney and heart disease, arthritis, asthma, high blood pressure, ADHD, uterine fibroids, and allergies. (R. 246) Concerned about her asthma with coronavirus spreading, Plaintiff stopped working at her part-time security guard position in March 2020. (R. 55)

Plaintiff does not know how to drive and relies on friends to take her places. (R. 42) She testified she cannot hold a job for long and that pain from her endometriosis, uterine fibroids, and swollen legs prevent her from working full days. (R. 54) In her words, her impairments "interfere[ ] with me when I'm working because . . . the pain is so unbearable, there was some days I had to go home early or I had to keep taking breaks at work and all that because I'd be hurting so badly. I'd be having real bad stomach pain from it." (R. 51) She testified that her pain is "all the time. My pain is all the time." (R. 56) It is especially bad at jobs that require her to sit down: "if I do a sit down job, it's like my stomach – my – you know, fibroid and endometriosis will be bothering me[.]" (*Id.*) She experiences excessive menstrual bleeding due to her uterine fibroids and must wear a diaper and change it frequently when she is on her period. (R. 51) Plaintiff had a nephrostomy tube inserted on her right side to drain urine from her kidney into a bag; the tube was removed in November 2019. (R. 60)

After a hearing, the ALJ found Plaintiff suffers from the severe impairments of chronic kidney disease, history of a ureteral stent and nephrostomy, hypertension, ischemic heart disease, osteoarthritis, and asthma. (R. 18) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work with limitations:

> [Plaintiff] can never push or pull with the right lower extremity, and occasionally push and pull with the left lower extremity; occasionally perform postural activities, except never climb ladders, ropes, and scaffolds, and never

2

>crawl; cannot have more than occasional exposure to extreme heat, vibration, and workplace hazards such as unprotected heights and moving machinery.

(R. 21) The ALJ found that, with this RFC, Plaintiff could perform her past relevant work as a fast-food worker/cashier (R. 25) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

*B. Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart

P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

  C. *Discussion*

Plaintiff's first and only contention is that the ALJ's consideration of her subjective complaints of abdominal pain related to her endometriosis ran afoul of the Eleventh Circuit's pain standard (Doc. 19 at 10-12). She contends that the ALJ, "[o]ther than making a conclusory statement, . . . does not give a reason for discrediting the claimant's statements

regarding her abdominal pain." (*Id*. at 12). The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain, she must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate (*i.e.*, 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513(b)(2)-(6). Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 22) This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, it is. The ALJ summarized Plaintiff's complaints of stomach pain: "She stated that her impairments cause severe pain while working, which has caused her to take extra breaks or leave work early. She stated that she must wear a diaper, and that she is scheduled for surgery." (R. 22) She continued: "Turning to the objective medical evidence, the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged." (*Id.*) And, "[Plaintiff] testified, and understandably may honestly believe that h[er] impairments are disabling. However, it is the duty of the undersigned to accurately determine the degree of her limitations based upon the totality of all of the other evidence of record. The undersigned has evaluated the claimant's subjective complaints and other allegations in accordance with 20 CFR 404.1529 and 416.929; and SSR 16-3p." (R. 22-23)

Plaintiff testified that her stomach pain is her primary impediment to working. (R. 56) Her endometriosis causes constant and severe pain. She said, "my stomach is bothering [me] because of the uterus fibroid and the endometriosis. And then I got a hernia on top of that and it was too much for me to work, trying to be lifting and all this and that." (R. 52) Arthritis in her left leg compounded her pain. "I would be going home [from work] on the cane because

my leg be hurting so bad. My legs and my body be hurting and it's like I'd be leaving these jobs, going home on a cane because my leg be hurting and be swollen and my – and I'd be going home with some issues and it's like my body aches." (*Id.*) The edema in her right leg was due to her nephrostomy tube and urine bag being on that side of her body. (R. 61) According to Plaintiff, her supervisors got frustrated with her because she took frequent bathroom breaks. (R. 54) "[E]very job I worked at, they always get mad at me because I got to constantly keep taking too many breaks because of my stomach and then I have to go to the bathroom and go pee all the time." (R. 59)

But Plaintiff's records do not tell the story of a person with disabling pain. Plaintiff spent a week in Tampa General Hospital in November 2018 (her onset date), for acute cystitis without hematuria, chest pain, and a displaced nephrostomy tube. (R. 538) She told doctors she had been lightheaded for three days, experienced a syncope episode, and lost vision temporarily in her right eye. (R. 540) Hospital records indicate she had a "right sided nephrostomy tube for years, which she has not changed since September 2018 because she was told she needed to have a hysterectomy . . . She was supposed to see her gyn three years ago but has not followed up with them." (*Id.*) Plaintiff complained of severe pain during menstruation. Her provider recapped her history: Plaintiff had been treated for endometriosis from 2014 until January 2017; she had been on medication in 2015 and 2016, which had "completely stopped her menses and resolved her pain;" and she was "lost to follow up" between January 2017 (when surgery was recommended) and November 2018 (her alleged onset date). (R. 551) Her provider again recommended a total hysterectomy. (R. 555)

Next, in March 2019, Plaintiff had an annual wellness exam with a nurse practitioner at Tampa Family Health Centers. Plaintiff reported no abdominal pain, no menstrual

7

problems, and no trouble urinating. (R. 788)  In June 2019, Plaintiff said she had normal menses. (R. 803)  In August 2019, after Tampa General urologist Emad Mikhail, M.D. recommended a laparoscopic excision of Plaintiff's endometriomas and a hysterectomy, Plaintiff reported for what was supposed to be a pre-operative visit. (R. 816)  Having neglected to obtain the cardiac clearance required for surgery, Plaintiff said she "does not want to pursue surgery for now," and "I feel fine.  I do not want to do the surgery." (R. 823-24)  So, Dr. Mikhail recommended conservative management and a nephrostomy tub exchange. (R. 826)

In September 2019, at a follow up at Tampa Family Health Centers, Plaintiff requested a referral to an optometrist. (R. 800) She reported no abdominal pain, no increased urinary frequency, and no difficulty urinating. (*Id.*)  Plaintiff told her provider she had right side nephrostomy "for 4 years now.  She states it is because of the fibroids and endometriosis she has.  She does not want to fix the problem as right now she is not in pain." (*Id.*)  Plaintiff testified that her nephrostomy tube was removed the next month because "[t]hey said that they didn't think I needed the nephrostomy tube anymore." (R. 60)

On this record, the ALJ's consideration of Plaintiff's subjective complaints of pain is supported by substantial evidence.  Plaintiff points to no conflicting evidence; instead, she argues the ALJ reached the wrong conclusions after reviewing her medical records.  I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion.  *See Bloodsworth*, 703 F.2d at 1239.  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___;

139 S.Ct. 1148, 1154 (2019).  I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.  On this record, the ALJ did not err in considering Plaintiff's complaints of pain and limiting her to light work.

    D.    *Conclusion*

It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on July 19, 2022.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE